Marshall Savings and Loan Association, Plaintiff-Appellant, v. John R. Henson, et al., Defendants-Appellees, and Federal Savings and Loan Insurance Corporation, Petitioner-Appellee.

Gen. No. 51,485.

First District, First Division.

November 9, 1966.

Rehearing denied December 1, 1966.

Boodell, Sears, Foster, Sugrue & Crowley, and Marcus and Orr, all of Chicago (Barnabas F. Sears, Gale L. Marcus, Wallace W. Orr and Gerald M. Sheridan, Jr., of counsel), for appellant.

William G. Clark, Attorney General of the State of Illinois, of Chicago (Robert J. Downing and Jay Erens, Special Assistant Attorneys General, of counsel), for defendants appellees.

Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, and Thomas R. Mulroy, Mark Crane and Robert W. Patterson, all of Chicago (Kenneth E. Scott, Alan J. Moscov and Max Wilfand, of counsel), for petitioner-appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Marshall Savings and Loan Association, appeals from a declaratory judgment order entered in favor of Federal Savings and Loan Insurance Corporation (FSLIC) and against Marshall Savings and Loan Association (Marshall). Marshall originally appealed to the Supreme Court and that Court transferred the matter to this court. The relevance of the declaratory judgment order is best indicated in a summary structure of the three complaints in equity that are involved. The first suit *(custody case)* was brought by Marshall on January 29, 1965, contesting the custodial taking of its assets by Joseph E. Knight, the Director of Financial Institutions for Illinois. On April 9, 1965, Knight filed suit *(liquidation case)* for liquidation of Marshall under the Illinois Savings and Loan Act. Marshall filed the third case on July 26, 1965, to sequester its assets and to enjoin Knight from taking further proceedings in the *liquidation case* until there was a final adjudication in the *custody case*. It was in this last case that leave was granted FSLIC to file its Petition for Declaratory Judgment, which was

16

declared a counterclaim, and trial was had on the petition and answers thereto. On May 4, 1966, the Chancellor signed the Declaratory Judgment Order from which Marshall appeals. This order decreed that the assignment to FSLIC of Marshall's withdrawable share accounts was valid; that FSLIC, as assignee, had all the rights, title, and interest including the voting rights in the insured funds of the assignors; that FSLIC was a member of Marshall; that there was no just reason for delaying enforcement; and that the order did not adjudicate the pending issues of the legality of the appointment of the receiver for Marshall nor the charge of conspiracy and collusion raised by Marshall.

The detailed chronology of events that took place are as follows:

On December 31, 1964, Joseph E. Knight, as Director of Financial Institutions for Illinois, took custody of Marshall and Marshall ceased doing business. On January 29, 1965, Marshall filed the *custody case* in the Circuit Court contesting the legality of the custodianship and requested that Knight be enjoined. Before the case was at issue, Knight issued an order placing Marshall in receivership for the purpose of liquidation and on the following day, April 9, 1965, he filed the *liquidation case* in the Circuit Court under section 10–2 of the Illinois Savings and Loan Act. Ill Rev Stats 1965, ch 32, § 922.

FSLIC, by directive of the National Housing Act, paid $83,877,901.99 in insurance to over 26,000 members of Marshall between April 19, 1965, and February 28, 1966.

On July 26, 1965, Marshall filed a complaint in the Circuit Court to sequester its assets, to enjoin further proceedings in the *liquidation case,* and to have a disinterested receiver appointed to manage its assets until there was a final adjudication in the *custody case.* Detailed averments were made concerning the "unlawful custodial taking" and the "purported" appointment of a receiver and it was alleged that the conflicting claims

17

of the parties to Marshall's assets required a "plenary suit where all claimants could be made parties. . . ."

It was in this last case that leave was granted to FSLIC, on September 28, 1965, over objection by Marshall, to file its Petition for Declaratory Judgment seeking a determination of its voting rights as a member of Marshall. On October 14, 1965, Marshall requested a change of venue based upon the prejudice of the trial judge, which was denied on January 10, 1966. On February 1, 1966, the court heard and denied Marshall's motion for a temporary injunction to restrain the prosecution of the *liquidation case,* and on February 8, 1966, an order was entered denying Marshall's motion to Strike and Dismiss the Petition for Declaratory Judgment. On March 28, 1966, Marshall's motion to dismiss its complaint without prejudice upon payment of costs was denied, the Declaratory Judgment Petition was declared a counterclaim and Marshall filed its answer thereto. Marshall then moved to transfer the cause to the law division and for a jury trial which was denied on April 12, 1966.

The trial on petition and answers thereto commenced on April 25, 1966, and during its course Marshall filed a written motion for judgment on the pleadings upon which the court reserved its ruling. On May 4, 1966, after seven days of trial, Judge Cornelius Harrington (who was assigned all three cases) signed the Declaratory Judgment Order from which Marshall appeals.

■ ■ We are first confronted with Marshall's assertion that the improperly denied petition for a change of venue voided all subsequent proceedings. The Petition was filed under section 1 of the Venue Act, Ill Rev Stats 1965, ch 146, § 1, which allows a change of venue when either party believes that he will not receive a fair trial because of the judge's prejudice against him. We stated in Miller v. Miller, 43 Ill App2d 214, 215, 193 NE2d 105,

18

that this "statute gives an absolute right to a change of venue to a petitioner, when his petition asserting the prejudice of the trial judge is duly made, verified, and filed in accordance with the statute." The petition is in proper form and the controlling question is whether it was filed in apt time. It is the established law in Illinois that a petition comes too late when it is presented after the judge has ruled on a substantive issue in the cause. City of Chicago v. Hamlin, 24 Ill2d 148, 180 NE2d 473. As was said in Commissioners of Drain. Dist No. 1 v. Goembel, 383 Ill 323, 328, 50 NE2d 444:

> The reason that supports the rule is obvious. It would be highly improper to permit an attorney representing parties to a suit to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed.

 Marshall argues that any consideration of the change of venue should be restricted to the last complaint filed and does not involve the pending *custody* or *liquidation* cases, and that no substantive rulings were made in the case at bar at the time the petition for change of venue was filed. We do not find this reasoning easy to follow. Generally both the consideration of the substantive issue and the request for a change of venue occur in the same proceeding. In the instant case the substantive issues in our judgment occur in three proceedings which should have been consolidated. All three cases primarily involved the custodial taking over of Marshall by the Director of Financial Institutions. We are at a loss to understand why they were not consolidated, particularly in view of the fact that Judge Harring-

ton presided over all of them. To insist that they are not related seems to us to be unrealistic. Indeed, in the complaint at bar filed by Marshall, it contests the custodial taking over by the Director and seeks to enjoin him from further custody which seems to include the *custody case* as the prime issue in this action. It was also alleged that the restricted and sole legal jurisdiction in the *custody case* was for review of the administrative acts of Knight and that the court did not have jurisdiction of the *liquidation case* until the *custody case* was finally determined.

FSLIC was not a named party in the first two cases, but was included by Marshall as one of the defendants, in the case at bar, as a conspirator by "virtue of having wilfully and unlawfully" made payments to Marshall's depositors and making claim of "some right, title or interest in and to the assets of plaintiff as subrogees pursuant to the provisions of Section 406 of the National Housing Act." As counsel for FSLIC points out that except for different court members, the *custody case,* the *liquidation case,* and the case presently on appeal to this court, are one integrated series of legal disputes involving generally the same parties and issues even though FSLIC was not a named party in the first two proceedings.

The Chancellor ruled against Marshall's application for fees for counsel in the *custody case* as of that time and the Chancellor commented that the "largest single representative in this proceeding" is FSLIC which has advanced over $82,000,000 to Marshall's insured depositors. In the case at bar, Marshall renewed in its complaint its request for the protection of its rights in the premises. On March 25, 1965, the Chancellor also entered an order in the *custody case* striking certain paragraphs of a pleading filed by Marshall, and it appears that the stricken allegations are substantially realleged in the complaint at bar. The Chancellor in the *custody case* enjoined the directors and officers of Marshall from

20

the prosecution of ten foreclosure cases except when authorized by the Director. Further, in the case at bar, FSLIC requested leave to file a petition for a declaratory judgment, averring that FSLIC as a holder of the majority of the voting rights in Marshall should have the right to call, hold and vote at a special meeting of the members of Marshall for the purpose of electing directors. It was after the Chancellor permitted FSLIC to file this petition over vigorous objection by Marshall, and after the aforementioned orders were entered and rulings made, that Marshall requested a change of venue.

In the course of Marshall's argument to the Chancellor on many of the matters before him, there obviously were extensive discussions concerning the legal effects of many of the charges made by Marshall which concerned common questions of law and fact and which were intimately related to all three complaints. The decisions and remarks necessarily made by the Chancellor, in our opinion, afforded Marshall's counsels an opportunity to try out Judge Harrington's attitude with respect to the ultimate similar issues in all three cases, and we are of the opinion that the request for a change of venue was not filed in apt time and was properly denied.

Marshall relies on the cases of Miller v. Miller, 43 Ill App2d 214, 193 NE2d 105, Roherty v. Green, 57 Ill App2d 362, 206 NE2d 756, and Johnson v. United Motor Coach Co., 66 Ill App2d 295, 214 NE2d 326, in which the appellate court reversed the trial courts for failure to grant a change of venue. In Miller the court only considered and ruled on preliminary pretrial motions of temporary alimony and child support, the taking of a lie detector test, the substitution of attorneys, and issued two injunction writs, none of which had any direct bearing on the substantive issues presented in the complaint for divorce. The trial courts in the Johnson and Roherty cases failed to grant a change of venue after informal

pretrial conferences to effect a settlement. These cases are clearly distinguishable on the facts from the case at bar.

Marshall next contends that it was a denial of due process destroying the status quo of its litigation to have the declaratory judgment trial before the issues in the pending litigations had been determined. As recited in the Declaratory Judgment Order, the Chancellor specifically declined to pass on issues of (1) the legality of the appointment of the receiver and (2) whether it was a contrived and colluded appointment, and he stated during the trial that "the only issue involved is whether the FSLIC is holding the assignments and the rights of the [Marshall] shareholders." Marshall claims that the payouts to the shareholders by FSLIC are illegal because the appointment of the receiver was illegal, and further states that:

> the question at bar is *substantive due process* because while our suit was pending which questioned the right of Knight to be in custody, Knight and FSLIC, under the color of state law and upon notice that they acted at their peril, illegally took physical possession of Marshall's premises over its objections for the purpose of liquidating it and actually effected a substantial liquidation by shrinking its depositors to less than one-tenth its prior size.

Marshall argues that this is not a case where their claims have been rejected as irrelevant or immaterial so that their merits could be determined, but that this is a case where claims have been ignored and a litigant prevented from presenting evidence of his full defense and having it ruled upon at the trial.

██ The basic issue as we see it then, is whether it was a denial of due process for the Chancellor to determine that FSLIC had voting rights in Marshall before the issues in the prior litigation had been determined. What

is due process depends on circumstances and varies with the subject matter and necessities of the situation.

The record shows that Knight took custody of Marshall on December 31, 1964, pursuant to section 7–8 of the Illinois Savings and Loan Act, Ill Rev Stats 1965, ch 32, § 848, and later appointed a receiver for Marshall. The power to appoint such a receiver is conferred by section 10–1 of the aforementioned act, as follows:

> If the Commissioner after taking custody of an association . . . finds that any one or more of the reasons for taking custody continues to exist through the period of his custody, then he shall appoint any qualified person, firm or corporation as receiver or co-receiver of such association, or trust for the purpose of liquidation. Ill Rev Stats 1965, ch 32, § 921.

Thereafter, admittedly there arose much clamor on the part of the insured depositors for the payment of their insured accounts. The FSLIC, created in the National Housing Act by the 1934 Congress, insures savings up to $10,000 in savings and loan associations. The National Housing Act directs that the FSLIC "shall" pay insurance when a "default" occurs (12 USC § 1728(b)) and defines "default" as:

> The term "default" means an adjudication or other official determination of a court of competent jurisdiction or *other public authority* pursuant to which a conservator, receiver or other legal custodian is appointed for an insured institution for the purpose of liquidation. (Emphasis added.) 12 USC § 1724(d).

Section 405(b) of the National Housing Act provides:

> In the event of a default by any insured institution, payment of each insured account in such insured institution which is surrendered and transferred to

23

the Corporation [FSLIC] shall be made by the Corporation *as soon as possible.* . . . (Emphasis added.) 12 USC § 1728(b).

Under the Congressional mandate that it "shall" pay insurance "as soon as possible" when a "public authority" appoints a receiver for an insured institution for the purpose of liquidation (12 USC §§ 1724(d), 1728(b)), FSLIC thereafter paid out over $83,000,000 to Marshall's insured depositors.

FSLIC, a defendant in the instant complaint filed by Marshall, requested leave to file a Petition for Declaratory Judgment which was allowed over objection of Marshall. It is there alleged in pertinent part that subsequent to the appointment of a receiver by the Director, Marshall filed a proceeding in the Federal District Court to enjoin FSLIC from paying its insured members, which was denied, and the same result occurred on appeal to the Circuit Court of Appeals and on motion in the U. S. Supreme Court; that subsequently FSLIC commenced insurance payments to Marshall's members, obtaining assignments of their accounts and were entitled to withdrawal capital accounts at Marshall; that since holders of share accounts are entitled to one vote for each $100 of the withdrawal value of their accounts FSLIC is now the holder of more than 50% of the presently outstanding voting rights of Marshall; that it is against the public interest to permit directors of savings and loan associations to retain their offices and their voting control of an association after appropriate state authorities have ceased its operation and FSLIC has paid in full most of the withdrawal share accounts; and prayed that a declaratory judgment be entered declaring FSLIC as having the right at any meeting of Marshall's members to cast one vote for each $100 of the aggregate withdrawal value of accounts held by FSLIC.

The matter was heard on the petition and answers of Marshall and others, and on May 4, 1966, the Declaratory Judgment was entered. The order recited that after hearing the testimony of witnesses and reviewing the documentary evidence and applicable statutes, the Chancellor found that the assignments to FSLIC from holders of Marshall's withdrawal share accounts were valid and transferred all rights in the deposited funds including voting rights; that FSLIC holds withdrawal share accounts in Marshall with an aggregate value of $83,877,-901.99 and has been a member of Marshall continuously since April 21, 1965.

From an examination of the proceedings, we take note that the Chancellor was confronted with the fact that the disposition of the allegations of Marshall in all three cases were unlikely to be determined for some period of time. A default had been declared by the State Director, a receiver appointed by him and the business of Marshall was at a standstill. Under these conditions FSLIC had no alternative and indeed it was their duty, under the National Housing Act and under the policy of the Federal Insurance Program, to make payments to the insured member of Marshall as soon as possible, as was done.

The Chancellor ruled that the matters for Declaratory Judgment should be heard prior to the hearings on the merits in the *custody case* and *liquidation case*. Under all the circumstances heretofore mentioned in this opinion, we believe this conclusion was within the Chancellor's discretion consistent with section 57.1 of the Civil Practice Act. It provides that when "a declaration of rights is the only relief asked, the case may be set for early hearings as in the case of a motion" and permits a declaratory judgment to be entered if it would terminate the controversy, or some part thereof, giving rise to the proceeding. Ill Rev Stats 1965, ch 110, §§ 57.1(1), 57.1(2).

Marshall further contends that the Chancellor erred in decreeing voting rights to FSLIC and also urges that the National Housing Act does not confer upon FSLIC the right of subrogation nor the right to procure an assignment for the purpose of subrogating FSLIC to all the rights of insured members. It is Marshall's theory that FSLIC derives the right of subrogation only where a Federal Savings and Loan Association is in default. We do not agree. The Act specifically provides that:

> in the event any insured institution *other than a Federal Savings and Loan Association* is in default . . . it shall pay the insurance as provided in section 1728 of this title, and shall have the power (1) to bid for the assets of the insured institution in default, (2) to negotiate for the merger of the insured institution or the transfer of its assets, or (3) to make *any other disposition of the matter as it may deem in the best interests of all concerned.* (Emphasis added.) 12 USC § 1729 (c).

This language, in our opinion, could hardly give broader power to FSLIC after payment of insurance. Nor are we in accord with Marshall that FSLIC, after paying insurance to its members and receiving an assignment of their membership, cannot become a member of the association. While we agree with Marshall that the entire concept of the Savings and Loan Act and the National Housing Act does not envision the payment of insurance of a "going concern," such is not the case here. So far as FSLIC is concerned the State Director had taken possession of Marshall and it ceased doing business.

Marshall also contends that FSLIC acquired no voting rights even if it could legally become a member of Marshall. It is undisputed that the Illinois Savings and Loan Act gives the depositors the status of shareholders

by conferring one vote for each $100 on deposit and that under this formula the depositors own the majority of the voting rights. Savings and loan associations "are so organized as to attract the savings of persons of modest means. Confidence is essential to the stability and maintenance of these institutions." People ex rel. Barrett v. Logan County Building & Loan Ass'n, 369 Ill 518, 525, 17 NE2d 4. The public confidence inspired by the insurance would be undermined by delay in its payment under the circumstances. FSLIC properly paid that insurance and the votes which it sought to exercise are those of former members of Marshall who now claim no rights as members with respect to the insured accounts.

During the trial on the Declaratory Judgment Petition it was Marshall's position that although the members had a right to vote one share for every $100, when they were paid off as far as the insurance is concerned, they lost their right to vote. The Chancellor then asked counsel for Marshall:

> The Court: Who picks up his right to vote?
>
> Mr. Marcus: If he has been paid off, I don't think he has a right to vote.
>
> The Court: Does anybody have a right to vote the stock?
>
> Mr. Marcus: My personal opinion is no. I don't believe anybody has a right to vote the depositor's shares. . . .

 FSLIC obtained the voting rights from Marshall's members who were insured and we see no merit to the contention that the transfer of these rights were ineffective because the certificates or passbooks were not endorsed by those members to FSLIC. Nor have we found any trial errors in the presentment of evidence as charged by Marshall. It was unnecessary for FSLIC to

deposit money in Marshall to become a member of Marshall under the facts and circumstances. We are unconvinced that the Chancellor usurped legislative powers. To discuss in detail the many articulated assertions and the numerous cited cases in Marshall's brief and reply brief would, in our opinion, unduly and unnecessarily extend this opinion beyond all reasonable length. It suffices to say that we have carefully considered and analyzed all arguments.

There is considerable space devoted in the briefs to the *custody case* (65 CH 456), the *liquidation case* (65 CH 1875) and the other issues in the case at bar (65 CH 3955) which are still pending. We conclude, as did the Chancellor in his decree, that except for the matters contained in the declaratory judgment entered in the latter case, nothing in this opinion should be construed as deciding any of the other questions in the pending cases.

For the reasons stated in this opinion, the declaratory judgment is affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.