James **MAHONEY** et al., Plaintiffs-
Appellees,

v.

**FEDERAL SAVINGS AND LOAN IN-
SURANCE CORP., etc., Defendant-
Appellant.**

No. 16097.

United States Court of Appeals
Seventh Circuit.

March 26, 1968.

Thomas R. Mulroy, Mark Crane, Robert W. Patterson, Frederic L. Hahn, Chicago, Ill., Kenneth E. Scott, Alan J. Moscov, Washington, D. C., Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., of counsel, for appellant.

Herbert Lesser, Willard J. Lassers, Chicago, Ill., Alex Elson, Aaron S. Wolff, Elson, Lassers & Wolff, Chicago, Ill., of counsel, for appellees.

Before HASTINGS, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

This is an action to recover insurance on deposits in a federally insured Illinois savings and loan association (Marshall) which defaulted April 8, 1965. Defendant FSLIC contends that the amounts claimed are in excess of the statutory maximum, which it has already paid. The facts directly presented involve three accounts. Plaintiffs claim that James and June Mahoney held one account, James, June, and their son, John, another, and James, June, and their daughter, Patricia another. This is also a class action on behalf of others similarly situated.

The district court denied FSLIC's motion for summary judgment, and an appeal has been allowed under 28 U.S.C. sec. 1292(b).

12 U.S.C. sec. 1728(a) provided at the time of Marshall's default "that no member or investor of any such institution

shall be insured for an aggregate amount in excess of $10,000." [1]

The statute makes no specific provision for the treatment of joint accounts with respect to the maximum insurance per member. 12 U.S.C. sec. 1724(b), besides making certain provisions for custodians of public funds and fiduciaries, defines "insured member" as "an individual, partnership, association, or corporation which holds an insured account."

Jointly held accounts, however, are a common phenomenon. Probably to resolve questions and problems which would arise if there were no special provision for them, provision has been made by regulation, as follows:

"An insured account held jointly is insured in the same manner as an insured account held by a partnership, up to but not exceeding $10,000 jointly to the holders thereof." [2]

No question is raised concerning the validity of the regulation.

FSLIC relies on Illinois statutory and case law governing joint ownership of accounts in savings and loan associations and banks, and contends, in effect, that although James and June Mahoney intended to set up two of the accounts so that each would be held jointly by themselves and one of their children, they failed to accomplish this purpose in the manner required by Illinois law.

The gist of plaintiffs' position seems to be (1) since the insurance is created by federal law, Illinois law need not be applied and effect should be given to the intention of the parties or (2) if Illinois law is to govern, we must apply the Illinois rules which would apply to the creation of a partnership account, because of the reference to partnerships in the regulation above quoted. Also, as an alternative, they suggest that FSLIC does not correctly interpret the Illinois law.

FSLIC contends that each of the three Mahoney accounts involved in this ac-

tion was held by James and June Mahoney as joint owners and that this combination of persons, or joint ownership, constituted but a single "member" entity, so that the $10,000 maximum applied to the aggregate of the three accounts. Plaintiffs would contend that there was a different "member" entity holding each account, so that the $10,000 maximum applied to each account, separately. According to plaintiffs the "member" entity holding account No. 59868 was composed of James and June; account No. 62387, James, June and John; account No. 62030, James, June, and Patricia.

We have referred to a "member" entity. The concept arises out of the regulation above quoted which deals specially with jointly held accounts as if the several holders constituted a single "member".

■■ The key question is the identity of the "member" entity which held each of the three accounts and was insured with respect to each. The federal statute clearly contemplates that if several insured accounts are held by one "member", the accounts must be aggregated for the purpose of applying the maximum limitation on insurance. The federal statute and the regulation in the form it had in 1965 simply assume that a "member" can be identified. This federal statute does, of course, provide insurance protection for rights created by transactions governed by state law. It implies, we think, that the law which governs the creation of rights and obligations between account holders and associations answers the question as to the identity of the "member" when applied to the facts. If Mr. and Mrs. Mahoney had all the rights against the association with respect to these accounts in the absence of default, we see no logic in a theory that their children were also constituents of "member" entities for the purpose of insuring such rights.

1. The section was amended October 16, 1966, making the maximum $15,000.

2. 12 C.F.R. sec. 561.3.

There can be no dispute about the ownership of account No. 59868. The names at the top of both the ledger sheet and the application and agreement form were: "Mahoney, James or Mahoney, June". Both signed the application and agreement, which contained the following:

"2. One or more share certificates or an account book, or both, shall be issued to the undersigned to evidence said account. The undersigned agree that each of said share certificates and said account book (if any is issued) shall be issued in their names as joint tenants with the right of survivorship; the account, and any part thereof, shall be payable to any of them or to the last survivor of them; and any payment made by the Association to any of the undersigned, whether any other of the undersigned shall be living or not, shall be a complete discharge of the Association's obligation as to the amount so paid. The signature of any of the undersigned shall be sufficient to the validity of any withdrawal application, proxy, or other instrument requiring shareholder signature in connection with said account.

"3. The undersigned intend that upon the death of any of them, the survivor or survivors shall be the sole beneficial owner or owners of the account, even if the funds for the account were provided wholly or in part by the decedent."

The application and agreement form was stamped with the legend: "As Joint Tenants with the right of survivorship and not as tenants in common."

Under Illinois Revised Statutes, S.H.A. Ch. 32, sec. 770(a), James and June Mahoney held the account as joint owners with right of survivorship. Either was entitled to withdraw.

The application and agreement form for account No. 62387 was the same except that the names at the top of it (and of the ledger sheet) included John

Mahoney: "Mahoney, James or Mahoney, June or Mahoney, John".

Illinois Revised Statutes, S.H.A. Ch. 32, sec. 770(a), part of the Illinois Savings and Loan Act, provides in part:

"If two or more persons opening or holding a withdrawable capital account shall execute a written agreement * * * providing that the account shall be payable to any or the survivor of them, the account, and any balance thereof which exists from time to time, shall be held by them as joint owners with right of survivorship and, unless otherwise agreed, any payment by the association or federal association to any of such persons shall be a complete discharge of the association's or federal association's obligation as to the amount so paid."

The agreement was signed only by James and June and conferred rights only upon "the undersigned". Did the addition of "or John Mahoney" in what might be termed the title of the account create any obligation from Marshall to him, or confer upon him any right which he could enforce against Marshall?

We find no Illinois case on all fours.

In Doubler v. Doubler [3] an individual had a bank account in his own name. Later he instructed the bank to write his wife's name on the passbook and to write: "Payable to either of them or the survivor with full survivorship rights". No agreement was signed by either individual. The court held that there must be an agreement signed by both in order to create rights of survivorship. The original depositor had died and the balance on deposit was awarded to his estate, and not to the surviving wife.

In Frey v. Wubbena [4] the court approved the *Doubler* holding with respect to bank accounts, saying,

"However, it was held in Doubler * * * that it is necessary that such an agreement be signed by the parties in order to create rights of

---

3. (1952), 412 Ill. 597, 107 N.E.2d 789.

4. (1962), 26 Ill.2d 62, 185 N.E.2d 850.

160

survivorship in the deposit. There has been no material change in the statute since Doubler and that decision will not now be disturbed."

The court referred to the Illinois Savings and Loan Act, sec. 770, and said that it

"contains broad and comprehensive provisions for the creation of rights of survivorship in the case of savings and loan association capital accounts, and makes the signing of an agreement among the parties mandatory. * * * By the statutory provisions referred to, the legislature has expressly provided for the creation of survivorship accounts in savings and loan associations and has prescribed the method by which such accounts can be set up." [5]

■ The parties have cited no Illinois case, to be sure, where two individuals have signed an agreement for joint ownership between themselves, but the title of the account, presumably at their direction, includes the name of a third individual. It is our best judgment, however, in the light of the statute and the views expressed in the Illinois decisions referred to, that in this situation it is the law of Illinois that either or the survivor of the signers may withdraw, but that the non-signing third party may not; that as far as the legal obligations of the association are concerned, the account is held by the two signers as joint owners with right of survivorship.

We think it follows that as to this account, also, James and June Mahoney constitute the "member" of the association for the purposes of insurance by FSLIC.

The situation as to No. 62030 is not entirely identical. The printed form of application and agreement was designed for use by individual depositors, or tenants in common. It was signed by James and June. It contained the following:

"The undersigned agree that each of said share certificates and said ac-

count book (if any is issued) shall be issued in the names of the undersigned, and that the signature of each of the undersigned shall be necessary to the validity of any withdrawal application, receipt, proxy, or other instrument requiring shareholder signature in connection with said account."

The names at the top (as on the ledger card) were "Mahoney, June or Mahoney, James, or Mahoney, Patricia (Minor)" and after the names appeared the stamp "As joint tenants with the right of survivorship and not as tenants in common."

■ It seems clear that Mr. and Mrs. Mahoney are the co-owners of this account, although there is some question whether withdrawals can be made by either or the survivor or whether withdrawals can only be made by both, signing together. On the one hand, the printed portion of the application and agreement provides that each must sign in order to withdraw. On the other hand the stamped legend and the use of the word "or" in the title suggests that either may draw, although the exact language required by sec. 770(a) does not appear.

If the stamped legend, by overriding the inconsistent printed provision, made the agreement signed by the Mahoneys a sufficient compliance with sec. 770(a), then this account was owned by the same "member" entity as the others. If it was not, we think James and June were tenants in common. In such situation, the administrative interpretation, under the existing regulation was that each individual was a different "member" of the association. Plaintiffs have not, in this action, claimed that James and June as individuals were entitled to be paid insurance with respect to these accounts.

■ Plaintiffs contend that because the regulation provided that "an insured account held jointly is insured in the same manner as an insured account held by a partnership" no more formality

5. See, also, recent approval, of *Wubbena* and *Doubler*, In re Estate of Morey

(1967), 38 Ill.2d 575, 580, 232 N.E.2d 734.

is required to create an account held jointly than would be required to open an account for a partnership. We do not agree. It must first be determined whether, under the applicable state law, there is an account held jointly. If one exists, the regulation says it is insured like the account of a partnership.

Plaintiffs have called to our attention new or amended regulations effective September 1, 1967,[6] 12 C.F.R. sec. 564.9 sets forth rules as to accounts which qualify for treatment as joint accounts and the manner in which such accounts or interests therein are to be aggregated for application of the maximum limitation on insurance, now $15,000. It is true that this regulation refers to an account owned by tenants in common as an account owned jointly, but it is so treated for insurance purposes "only if each co-owner has personally executed an account signature card and possesses withdrawal rights." The new regulation, of course, was not in effect at the time of Marshall's default, and has no direct application to our case. If there are differences in administrative approach to the problem, they are not of a type which discredit the reasoning we have applied here under the regulation as it existed at the time.

### Estoppel.

Plaintiffs claim three grounds on which they say FSLIC is estopped from asserting that the three accounts were not each subject to a separate $10,000 maximum limitation on insurance.

(1) The claim is that certain advertising by savings and loan institutions induced the public to believe that each separate account in an insured institution was insured to $10,000 and that FSLIC ought to be held responsible because it did not direct the institutions to stop this advertising. Plaintiffs do not, however, claim they held this belief, and it is clearly contrary to the statute.

(2) The claim is that "other statements", the context or character of which is not described, which savings and loan institutions issued, but FSLIC did not take action to prevent, induced plaintiffs to believe that separate accounts were each insured up to $10,000 "so long as the depositors therein were not identical with the depositors in another account in the same institution or there existed any difference of ownership between the various accounts." Plaintiffs do claim they relied on this belief. Since it has been decided in this litigation that these accounts are identical as to depositors and ownership, the claimed belief, if erroneous under some circumstances, did not mislead plaintiffs here.

(3) The claim is that FSLIC had authority to examine Marshall's records, should have known that the application and agreements signed by the Mahoneys did not accomplish what they intended, and is estopped to rely on that failure since it did not give notice to plaintiffs.

With respect to (3) affidavits presented by FSLIC on its motion for summary judgment establish that as of September 30, 1966 there were 4,513 savings institutions insured by FSLIC, with some 40,000,000 accounts; that Marshall had 27,197 members, of which about 17,000 were joint accounts; that independent or official audits are made annually for the primary purpose of determining financial condition of institutions and not the insurability of accounts; and that it is not standard auditing procedure to examine signature cards for proper completion.

There is a further claim that FSLIC is estopped to claim that joint owners of an account must all sign because FSLIC approved the printed form of application agreement for joint ownership and it bears at the bottom the printed legend "(One Signature required)". This claim has no merit. The legend is consistent with the provisions of the agreement that the "signature of any of the undersigned" is sufficient for withdrawal, and the like. Signifi-

6. 32 F.R. 10415.

cantly, the legend does not appear on the application and agreement for Account No. 62030, the body of which says that "the signature of each of the undersigned" is necessary for withdrawal.

■ The imposition of responsibility on FSLIC for plaintiffs' failure to achieve their purpose would be dubious under these circumstances even if FSLIC were not a government instrumentality. In addition, because it is, its funds are protected by the law even where its agents may have caused people to misunderstand the law.[7]

We hold, therefore, that there is no genuine issue as to any material fact, and FSLIC is entitled to judgment as a matter of law.

### *Additional material presented by FSLIC.*

The printed appendix filed by FSLIC on appeal presented material which had not been presented to the district court. No objection has been made to an excerpt from a March, 1937 issue of the Federal Home Loan Bank Review nor to excerpts from a July, 1941 Manual of Rules and Regulations for Insurance of Accounts. These excerpts indicate past administrative interpretation consistent with the position of FSLIC in this case, particularly with respect to reliance on the law of the state concerning the creation of a joint account.

The FSLIC appendix also presents 13 letters of attorneys in the office of the general counsel of the Federal Home Loan Bank Board, answering individual inquiries, and a public information pamphlet issued by Marshall. The letters apparently have not been given any public circulation. Plaintiffs have moved that the letters and pamphlet be stricken or disregarded in the consideration of the case.

■ The challenged documents might well be relevant and helpful material in resolving questions of the type presented here. It would have been better prac-

tice to present them to the trial court or to have sought permission, on notice, to present them to us. We have in fact disregarded them in our consideration of the issue.

The order appealed from will be reversed and the cause remanded with instructions to grant judgment for defendant.

---

7. Federal Crop Ins. Corp. v. Merrill (1947), 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, 175 A.L.R. 1075.