Marie M. MICHALS, also known as Mary K. Michals, individually, and as Administrator of the Estate of Edward H. Michals, Deceased, Plaintiff-Appellant,

v.

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a body corporate and an instrument of the United States of America, Defendant-Appellee.

No. 17373.

United States Court of Appeals Seventh Circuit.

July 10, 1969.

| | |
|---|---|
| Mary K. Michals as trustee for Edward Michals | 10,000.00 |
| Marie M. Michals as trustee for Edward H. Michals | 5,000.00 |
| | $48,466.45 |

Donald L. Johnson, Chicago, Ill., for appellant.

Paul E. McGraw, Daniel J. Goldberg, Francis G. McKenna, Washington, D. C., Thomas R. Mulroy, Robert Patterson, Frederic L. Hahn, Chicago, Ill., Max Wilfand, Acting General Counsel, Washington, D. C., of counsel, for appellee.

Before CASTLE, Chief Judge, FAIRCHILD, Circuit Judge, and ESCHBACH, District Judge.

CASTLE, Chief Judge:

Plaintiff, on behalf of herself and as administrator of her late husband's estate, brought this action in the district court to recover $38,466.45, plus interest and costs, allegedly owed her by defendant agency (FSLIC) as insurance on various savings accounts which she and her husband held in Marshall Savings and Loan Association of Riverside, Illinois, which was an "insured" institution under 12 U.S.C. § 1724. The six accounts so held were as follows:

| *Title of Account* | *Amount* |
|---|---|
| Edward Michals or Mary K. Michals as joint tenants. | $ 8,466.45 |
| Marie M. Michals or Edward H. Michals as joint tenants | 10,000.00 |
| Edward Michals as trustee for Mary K. Michals | 10,000.00 |
| Edward H. Michals as trustee for Marie M. Michals | 5,000.00 |

On December 31, 1964, the Director of Financial Institutions of the State of Illinois, pursuant to Illinois Revised Statutes, Chapter 32, § 848 (1963), took custody of Marshall. This custody allegedly entailed freezing all accounts so that depositors could neither withdraw funds nor alter the style of ownership of their accounts. Plaintiff's husband died on April 6, 1965, at which time, under the terms of the instruments which established the accounts, each account became the sole property of the plaintiff. Two days later, on April 8, 1965, the Director formally declared Marshall in default and appointed a receiver for purposes of liquidation, pursuant to Ill.Rev.Stat., Ch. 32, § 921 (1963). The default order stated that the causes for liquidation existed at the time the Director took custody.

Plaintiff sought to recover from FSLIC the full amount of $48,466.45, claiming that there were six separate accounts at the date custody was taken, and that that date should control. Since no account exceeded the then insurable limit of $10,000 per account, plaintiff claims all accounts were fully insured.[1] Plaintiff also contends that defendant is estopped from denying liability. Defendant, on the other hand, claims that the default date controls, and that at that date, due to her husband's prior death, plaintiff owned all six accounts and was thereby limited to $10,000 of insurance.[2] Defendant moved to dismiss the complaint for failure to state a

---

1. The defendant admits that, prior to Mr. Michals' death, there was more than one insured account, but contends that at least two of the six would be grouped together for purposes of applying the insurance limitation. On oral argument, counsel for plaintiff conceded that there may actually be as few as three accounts. For purposes of this appeal from the granting of defendant's motion to dismiss, however, it is enough that there would be, if plaintiff prevailed, more than one fully insured account.

2. The receiver of Marshall has issued to plaintiff a certificate of interest for $38,466.45, the unrecovered balance, which entitles plaintiff to participate in the proceeds of liquidation.

claim upon which relief could be granted. After the filing of briefs, the district court granted defendant's motion and this appeal followed.

The solution of the instant case lies in the statutory scheme of the National Housing Act, 12 U.S.C. § 1701, et seq., pursuant to which the defendant agency operates. § 1724(b) defines "insured member" as "an individual, partnership, association, or corporation which holds an insured account." § 1728(a) provided that "no member * * * shall be insured for an aggregate amount in excess of $10,000 [3] § 1728(b) provides:

> "In the event of a default by any insured institution, payment of each insured account in such insured institution which is surrendered and transferred to the Corporation shall be made by the Corporation as soon as possible * * *."

§ 1724(d) provides the definition of "default":

> "The term 'default' means an adjudication or other official determination of a court of competent jurisdiction or other public authority pursuant to which a conservator, receiver, or other legal custodian is appointed for an insured institution for the purpose of liquidation."

Thus, defendant argues that since the default of the institution triggers its obligation to pay deposit insurance, the date of such default "governs the determination of both the amount of insurance payments and the identity of insured members." Therefore, since the default date in the instant case—April 8, 1965—fell after the death of plaintiff's husband, plaintiff owned all six accounts at the time of default and was thereby limited to a recovery of $10,000.[4]

Plaintiff argues that the date of seizure by the Director of Financial Institutions of Illinois—at which date plaintiff admittedly had more than $10,000 of insurance—should control the identity of insured members and the amount of insurance payable to each such member. Under state law, Ill.Rev. Stat., Ch. 32, § 848 (1963), the Director [5] could take custody of a savings and loan association when such association was in financial danger. Among the purposes of taking custody are examination, conservation of assets, restoration of impaired capital, reorganization, liquidation, and "the maturing of the obligation of the insurance corporation." Ill. Rev.Stat., Ch. 32, § 849. The Director is also empowered to "make any necessary orders, findings and determinations which may be required for the purpose of making the insurance available to the members." Ill.Rev.Stat., Ch. 32, § 851 (c). Plaintiff argues that since the state statutory scheme is meant to complement the National Housing Act for the purpose of protecting innocent savers, and since a period of up to six months might elapse before—if ever— a default order is issued, Ill.Rev.Stat., Ch. 32, § 855, during which time the depositors might be foreclosed from withdrawing their funds, this delay should not be allowed to prejudice the insurance protection afforded to the savers.

However, we are of the opinion that the identity of the insured members of a savings and loan association must be determined as of the date of default, and not the date the association was taken into custody by the state officials. It is on the date of default that the institution ceases to exist and liquidation begins. Until that date, the responsible state official or officials have a variety of courses of action available

3. The maximum amount was changed to $15,000 in 1966.

4. See Mahoney v. Federal Sav. and Loan Ins. Corp., 393 F.2d 156, 158 (7th Cir. 1968) (application of maximum limitation on insurance requires aggregating all accounts held by one member).

5. In 1965, the Illinois statute was amended to provide that the Commissioner of Savings and Loan Associations, rather than the Director of Financial Institutions, has the supervisory responsibility regarding custody. The Commissioner's powers are, however, identical to those formerly exercised by the Director.

to them. If custody is prescribed, the ultimate purpose of such custody is to rehabilitate the institution, if possible. Under the Illinois scheme, while the institution is in the Director's custody, he may permit or forbid withdrawals and deposits, assume the powers of the officers and directors and continue normal operations, or freeze accounts and halt operations while investigations are carried on. Ill.Rev.Stat., Ch. 32, § 850. If the cause for taking custody is removed, the Director must relinquish custody back to the directors of the institution. Ill.Rev.Stat., Ch. 32, § 854. Other states may provide for various other custodial alternatives, and some do not provide for custody at all.[6]

Thus, to hold, as plaintiff contends, that the date of custody controls the identity of members and amounts of insurance, would lead to an often unworkable, indefinite rule which would impede, if not prohibit, effective administration of the National Housing Act. For example, if the Illinois Director, after taking custody, allowed deposits and withdrawals to take place in an institution which was later declared to be in default, and the defendant was required to apply the date of the taking of custody to determine the identity of the members and amounts of insurance payable, the amounts to be recovered under such a scheme would not necessarily bear any relationship to the amount of actual deposits. The default date is the only date on which the rights of all parties are permanently fixed, and this is true, under the definition of "default" in 12 U.S.C. § 1724(d), uniformly throughout all the states.

Furthermore, our interpretation is in conformity with that of the defendant agency, which is charged with the administration of the National Housing Act. Thus, the regulations provide that "[t]he amount of each insured account will be determined from the savings account contract and from the books and records of the insured institution as of the date of default." 12 C.F.R. § 564.1(b). The position that the default date determines the status of an insured account was taken by the FSLIC as early as March, 1937, see 3 Fed. Home Loan Bank Review 187 (1936–1937), and has been repeated in later opinions of the general counsel of the Federal Home Loan Bank Board (the operating head of the defendant). The uniformity of this position, along with the lack of judicial interpretation of the relevant sections of the Act,[7] is entitled to "great deference" in our statutory interpretation. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), and cases cited therein. We therefore conclude that the date of default controls and that at that date plaintiff alone, in her individual capacity, owned all six accounts and was limited to an insurance recovery of $10,-000.

Plaintiff also contends that defendant should be estopped to deny liability on the accounts in question because plaintiff and her husband allegedly relied on certain advertising and representations made by personnel of Marshall that each of the accounts was fully insured. Plaintiff argues that since, under 12 U.S.C. § 1730, defendant could have regulated such advertising, and since defendant "occupies the status of assignee and/or subrogee of the association, 12 U.S.C. § 1729(b), Marshall Savings and Loan Association v. Henson, 78 Ill.App.2d 14, 222 N.E.2d 255 (1966), and thus has available only defenses available to Marshall," the rule of estoppel should apply.

A similar estoppel argument was advanced in Mahoney v. Federal Savings

---

6. Defendant cites four states as examples: Arizona Rev.Stats. § 6–473, et seq.; Georgia Code Ann., § 6–4 et seq. (Supp. 1956); Louisiana Rev.Stats., Ch. 9 R.S. 6:730 et seq.; Mississippi Code of 1942, Ch. 3, § 5288 et seq.

7. We agree with defendant that the decision of this Court in Federal Savings & Loan Insurance Corp. v. Huttner, 401 F.2d 58 (7th Cir. 1968)), is inapplicable to the issues presented in the instant case.

& Loan Insurance Corp., 393 F.2d 156 (7th Cir. 1968), cert. den. 393 U.S. 837, 89 S.Ct. 112, 21 L.Ed.2d 107, also involving Marshall Savings and Loan. This Court rejected the argument since the defendant is a government agency whose "funds are protected by the law even where its agents may have caused people to misunderstand the law." [Citing Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 383–385, 68 S.Ct. 1, 92 L.Ed. 10 (1947)]. 393 F.2d at 162. Nothing in the *Henson* case, *supra,* cited by plaintiff, changes the rule that government agencies cannot be estopped by acts of their agents. Rather, that case merely stands for the proposition that FSLIC is subrogated to the rights of the insured members of Marshall to the extent of its payments to such members (i. e., that FSLIC became a member of Marshall).

Accordingly, the judgment below is affirmed.

Affirmed.