**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,**
Plaintiff,

v.

**APOLLO SAVINGS, CHICAGO, ILLINOIS, an Illinois Corporation,**
Defendant.

No. 68 C 727.

United States District Court
N. D. Illinois, E. D.
May 13, 1968.

———◆———

Paul E. McGraw, Assoc. Gen. Counsel, and Daniel J. Goldberg, Asst. Gen. Counsel, Washington, D. C., for plaintiff, John F. McCarthy, McCarthy & Levin, Chicago, Ill., of counsel.

David S. Mann, Mann, Cogan & Czekala, Chicago, Ill., for defendant.

## PRELIMINARY INJUNCTION

CAMPBELL, Chief Judge.

This cause coming on to be heard on April 22, 1968, upon the motion of the Federal Savings and Loan Insurance Corporation, plaintiff herein, for a preliminary injunction, and the Court having considered plaintiff's verified complaint, and the affidavits of Daniel J. Daly, Harold A. Taylor and J. J. Mackey and the exhibits thereto submitted by plaintiff in support of its motion for a preliminary injunction, and Apollo Savings, defendant herein, having failed to controvert the allegations of said complaint and the facts set forth in said affidavits and exhibits thereto, and having heard the statements and arguments of counsel for the plaintiff and defendant, the Court issued a preliminary injunction on April 22, 1968 and hereby makes the following findings of fact and conclusions of law with respect thereto:

### Findings of Fact

#### A.  Preliminary Findings

1.  Plaintiff is an agency and instrumentality of the United States which insures the withdrawable accounts of all Federal, and eligible State-chartered, savings and loan associations (12 U.S.C. §§ 1725, 1726(a) and 1730(k) (1)). Plaintiff brings this action under authority of section 407(f) (3) of the National Housing Act, as amended ("Act") (12 U.S.C. § 1730(f) (3)) to enforce its Temporary Cease-and-Desist Order ("Temporary Order") against the defendant and its directors, officers, employees and agents.

2.  The defendant is a permanent stock savings and loan association incorporated under the laws of the State of Illinois, with its principal place of business at 430 North Michigan Avenue, Chicago, Illinois, within the jurisdiction of this Court.

3.  At all times mentioned herein the plaintiff insured the accounts of the defendant and, therefore, the defendant

was and is subject to the provisions of Title IV of the Act (12 U.S.C. § 1724 et seq.), and the Rules and Regulations for Insurance of Accounts prescribed thereunder ("Insurance Regulations") (12 CFR 561.1 et seq.).

4. On April 8, 1968, plaintiff, acting pursuant to section 407(e) of the Act (12 U.S.C. § 1730(e)), issued its Notice of Charges and Hearing ("Notice") against the defendant charging that the defendant has violated, is violating and is about to violate: (a) section 403(b) of the Act (12 U.S.C. § 1726(b)); (b) sections 563.11, 563.13(c) and 563.27 of the Insurance Regulations (12 CFR 563.11, 563.13(c) and 563.27); (c) the terms of a written agreement, dated June 21, 1937, between the association and the plaintiff in connection with defendant's application for insurance of accounts ("Insurance Agreement"); and (d) section 10(b) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78j(b)), and Rule 10b–5 thereunder (17 CFR 240.10b–5). The Notice specifies and sets forth the grounds for institution of the proceeding, and fixes May 21, 1968, as the date for commencement of an administrative hearing to determine whether a permanent cease-and-desist order should issue against the defendant, and its directors, officers, employees and agents.

5. Accompanying the Notice was the Temporary Cease-and-Desist Order (Order No. 21,546), issued by the plaintiff on April 8, 1968, ordering the defendant and its directors, officers, employees and agents, to cease and desist forthwith from the violations and/or threatened violations set forth in the Notice. The plaintiff issued its Temporary Order, pursuant to the authority conferred upon it by section 407(f) (1) of the Act (12 U.S.C. § 1730(f) (1)), after making its determination that the aforesaid violations or threatened violations are likely to cause substantial dissipation of assets or earnings of the defendant, and are likely to otherwise seriously prejudice the interest of the insured members of the defendant association and of the plaintiff. The Notice and Temporary Order were served upon the defendant by registered mail on April 11, 1968.

6. Section 407(f) (1) of the Act (12 U.S.C. § 1730(f) (1)) provides that a temporary cease-and-desist order issued by the plaintiff becomes effective upon service on the insured institution and, unless set aside, limited, or suspended by a court in proceedings authorized by section 407(f) (2) of the Act (12 U.S. C. § 1730(f) (2)), remains effective and enforceable pending the completion of the administrative proceedings pending before the plaintiff under section 407(e) of the Act, and until the plaintiff either shall dismiss the charges specified in the Notice of Charges or, if a permanent cease-and-desist order is issued, until the effective date of such permanent order.

7. Section 407(f) (2) of the Act provides that the insured institution concerned may, within ten days after it has been served with a temporary cease-and-desist order, apply for an injunction setting aside, limiting, or suspending the enforcement, operation or effectiveness of plaintiff's temporary cease-and-desist order pending the completion of the administrative proceedings pursuant to the Notice of Charges under section 407(e) of the Act. As of the date hereof, the defendant has not applied for such injunctive relief with respect to the plaintiff's Temporary Order.

B. *Plaintiff's Temporary Order and Violations and Threatened Violations Thereof by the Defendant*

8. Paragraph 1 (p. 2) of plaintiff's Temporary Order directs the defendant and its directors, officers, employees and agents to cease and desist from violating section 563.13(c) of the Insurance Regulations and its Insurance Agreement with plaintiff, by engaging in, among other things, the following acts, practices or transactions:

"(a) The declaration or payment of any bonus on outstanding one-year cer-

tificate accounts issued prior to November 1, 1967, except to an extent which would enable the account holder to receive a return not in excess of the amount represented by an annual rate of 5 percent from the date of issuance of the certificate until October 31, 1967, after giving effect to the dividend as of said date;

"(b) The declaration, payment or advertisement of any dividends or interest, including any bonus, on the association's withdrawable accounts, or any dividends on its permanent, reserve or guaranty stock, for its semiannual period commencing November 1, 1967; * * *"

9. The background and circumstances with respect to the inclusion of the above-quoted provisions in plaintiff's Temporary Order are as follows:

a. By the terms of its Insurance Agreement entered into with plaintiff pursuant to the provisions of section 403(b) of the Act, the defendant agreed to comply with all valid rules and regulations made by the plaintiff for the insurance of accounts. Moreover, under the provisions of the Insurance Agreement, the defendant specifically agreed to provide adequate reserves satisfactory to the plaintiff in accordance with the Insurance Regulations before paying dividends to its insured members, and not to carry on any sales plans or practices, or any advertising, in violation of the Insurance Regulations.

b. Section 563.13 of the Insurance Regulations (12 CFR 563.13), prescribed under the Act, specifies the minimum Federal insurance reserve and net worth level requirements, and the required semiannual credits to the Federal insurance reserve account, for all insured institutions. Paragraph (a) (1) of section 563.13 requires an insured institution, such as the defendant, which has reached its twentieth anniversary of insurance of accounts by the plaintiff to maintain in its Federal insurance reserve account an amount at least equal to 5.0 percent of its savings accounts. The Federal insurance reserve is an account

which every insured institution is required to establish and maintain pursuant to the provisions of section 403(b) of the Act, as implemented by section 563.11 of the Insurance Regulations (12 CFR 563.11), for the sole purpose of absorbing losses; and, under the Act and regulation, such account may not be used to pay dividends. Paragraph (a) (2) of section 563.13 requires an insured institution to maintain a net worth level at least equal to its required Federal insurance reserve account level, *plus* 20 percent of the amount of its scheduled items (a type of substandard asset as defined in section 561.15 of the Insurance Regulations (12 CFR 561.15)).

c. Paragraph (b) of section 563.13 requires, with certain exceptions not here pertinent, an insured institution to make a semiannual transfer to its Federal insurance reserve account of an amount equal to at least 5 percent of its net income (10 percent for semiannual periods commencing prior to July 1, 1966).

d. Under paragraph (c) of section 563.13 any insured institution which has not met the aforementioned level and/or semiannual credit requirements of said section may not declare, pay or advertise any dividend or interest for the semiannual period subsequent to the immediately succeeding semiannual period in excess of the amounts, if any, approved by the plaintiff, unless in such succeeding semiannual period the institution is in conformity with the requirements of section 563.13 at the end of such period. In exercising its regulatory authority with respect to institutions subject to said section 563.13(c), the plaintiff issues an appropriate resolution specifying whether and under what circumstances the institution may pay a dividend.

e. Entirely apart from the matters set forth in Finding of Fact No. 12, infra, the defendant's *own* semiannual reports reflect a deficiency of over $1.8 million in its Federal insurance reserve account, over $3 million in the net worth level required by the Insurance Regulations, and a deficiency of some $244,391

in required semiannual credit transfers to its Federal insurance reserve account for its last three semiannual periods, as shown below:

| Semiannual Period Ending | Minimum Level in Federal Insurance Reserve Account Required by § 563.13(a) (1) | Amount in Federal Insurance Reserve Account | Deficiency |
| --- | --- | --- | --- |
| October 31, 1966 | $2,765,546 | $2,566,640 | ($198,906) |
| April 30, 1967 | 2,947,817 | 2,007,147 | ( 940,670) |
| October 31, 1967 | 2,974,933 | 1,130,242 | (1,844,691) |

| Semiannual Period Ending | Minimum Net Worth Level Required by § 563.13(a) (2) | Net Worth Level | Deficiency |
| --- | --- | --- | --- |
| October 31, 1966 | $4,679,646 | $3,184,083 | ($1,495,563) |
| April 30, 1967 | 4,618,527 | 2,624,590 | ( 1,993,937) |
| October 31, 1967 | 4,819,422 | 1,747,685 | ( 3,071,737) |

| Semiannual Period Ending | Credit to Federal Insurance Reserve Required by § 563.13(b) | Credit to Federal Insurance Reserve | Amount of Deficiency in Credit Transfer for Each Semiannual Period |
| --- | --- | --- | --- |
| October 31, 1966 | $120,439 | $1,072 | ($119,367) |
| April 30, 1967 | 66,233 | 9,103 | ( 57,130) |
| October 31, 1967 | 68,868 | 974 | ( 67,894) |

f. In view of the matters set forth in Finding No. 9e supra, the defendant was precluded by the provisions of paragraph (c) of section 563.13 of the Insurance Regulations from declaring, paying or advertising dividends or interest for its semiannual periods commencing May 1, 1967, and November 1, 1967, in excess of

the amounts, if any, approved by the plaintiff.

g. The plaintiff, by Resolution No. FSLIC–3,042, dated March 23, 1967, approved for the semiannual period commencing May 1, 1967 the declaration, advertisement and payment of dividends or interest on savings and deposits on regular accounts in an amount not in excess of that represented by an annual rate of 4.50 percent, computed and compounded semiannually, and on certificate accounts in an amount not in excess of that represented by an annual rate of 5.00 percent.

h. In disregard of Resolution No. FSLIC–3,042, the defendant paid dividends for its semiannual period commencing May 1, 1967, in an amount represented by an annual rate of 4.75 percent on regular accounts, and 5.25 percent per annum on one-year certificate accounts in the amount of $10,000 or higher.

i. The plaintiff, by Resolutions Nos. 20,894 and 20,977, dated September 28 and October 26, 1967, respectively, determined not to approve the declaration, advertisement or payment of any dividend or interest on savings and deposits by the defendant for its semiannual period commencing November 1, 1967, pending the receipt and review of additional material described in the resolutions. After receiving and reviewing such material and other current financial data, the plaintiff adopted Resolution No. 21,448, dated February 29, 1968. This resolution provides that for the semiannual period commencing November 1, 1967, the defendant may not declare, advertise or pay any dividends or interest on savings or deposits.

j. The defendant, since November 1, 1967, has advertised for and solicited savings (by means of advertisements inserted in the Chicago Sun-Times, the Chicago Daily News and the Chicago Tribune; a display sign exhibited on the association's premises; and verbal representations made to members by the defendant's officers and employees) on the basis that it will pay dividends for its semiannual period commencing November 1, 1967, at the annual rates of 4.75 percent on regular accounts, and 5.25 percent on one-year certificate accounts in the amount of $10,000 or higher, and 5.00 percent on one-year certificate accounts below $10,000. Moreover, the management of the defendant since November 1, 1967, advised the plaintiff from time to time, both verbally and in writing, that the defendant intended to pay dividends for its semiannual period commencing November 1, 1967, at the aforementioned rates.

k. The defendant has outstanding among its one-year, 5.25 percent, certificate accounts in the amount of $10,000 or higher, certain accounts with maturity dates between November 1, 1967 and April 30, 1968. It paid a dividend of 4.75 percent on these certificate accounts for its semiannual period ending October 31, 1967, and, in addition, since November 1, 1967, it has been paying a bonus of ½ percent on the one-year maturity dates of such certificate accounts.

10. Subsequent to service upon it of plaintiff's Temporary Order, the defendant, on April 12, 15, and 16, 1968, paid a bonus of ½ percent on its outstanding one-year certificate accounts maturing between said dates, thereby enabling the holders thereof to receive a return in excess of the amount represented by an annual rate of 5 percent from the dates of issuance of the certificates until October 31, 1967, after giving effect to the dividend as of said date.

11. Paragraph 2 (p. 3) of plaintiff's Temporary Order directs the defendant and its directors, officers, employees and agents to cease and desist from violating section 403(b) of the Act, section 563.11 of the Insurance Regulations, and its Insurance Agreement, by using the association's Federal insurance reserve account to pay dividends, and/or by using earnings to pay dividends until the association first applies its earnings to eliminate entirely the present deficit of

at least $580,000 in its undivided profits account.

12. The background and circumstances with respect to the inclusion of this provision in plaintiff's Temporary Order are as follows:

a. Ernst & Ernst, a nation-wide firm of certified public accountants retained by the defendant to conduct an audit of the association as of October 31, 1967, confirmed the fact that the defendant has overstated its income in prior periods, including the period ended October 31, 1967, by some $580,000. In its accountants' report with respect to said audit, dated November 24, 1967, Ernst & Ernst expressed the opinion that generally accepted accounting principles require that part of the amount of approximately $580,000 shown on the association's books as profits should be reversed by charging retained earnings, and that the remainder of the $580,000 in overstated income should be deferred.

b. Approximately $492,510 of the overstatement of income mentioned above is attributable to the semiannual periods ended October 31, 1966, April 30, 1967 and October 31, 1967. During such periods, and at the present, the defendant, being without undivided profits (undistributed earnings held as unallocated reserves for general corporate use) or earned surplus, had, and now has, no source other than earnings from which it could pay dividends. However, the defendant paid dividends for the three semiannual periods mentioned above based upon the inflated income figures shown on its books and, as a result thereof, its dividend payments exceeded its true net income for these periods by at least $481,-361.

c. Since the defendant was without undivided profits, and since earnings were insufficient to cover fully the dividends, the association, in effect, paid such dividends out of its Federal insurance reserve account to the extent that the dividends paid were in excess of true earnings. To put it another way, as a result of the payment of dividends in excess of true net income as set forth above, and the use of certain accounting practices during prior periods to overstate income, the defendant presently has a deficit of at least $580,000 in its undivided profits account.

d. The management of the defendant has advised the plaintiff from time to time since November 1, 1967, both verbally and in writing, that planned dividend requirements for the association's semiannual period ending April 30, 1968, would likely exceed its net income for the period, and that no provision was being made to apply current earnings to eliminate the deficit in the association's undivided profits account.

13. Paragraph 3 (p. 3) of plaintiff's Temporary Order directs the defendant and its directors, officers, employees and agents to cease and desist from "[v]iolating section 10(b) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78j(b)), and Rule 10b–5 thereunder (17 CFR 240.10b–5), by use of the mails, and/or the instrumentalities of interstate commerce, to advertise for and to solicit savings from the public, and to accept savings from existing and new members of Apollo Savings, without disclosure of certain adverse material facts with respect to the condition and affairs of the association, namely—that Apollo Savings has failed to comply with the requirements of paragraphs (a) and (b) of section 563.13 of the Insurance Regulations, and * * * [plaintiff] has adopted resolutions providing that the association may not declare, advertise or pay any dividends or interest on its withdrawable accounts for its semiannual periods commencing November 1, 1967 and May 1, 1968."

14. Subsequent to service upon it of plaintiff's Temporary Order, the defendant, between April 12–16, 1968, used the mails to conduct its business, and, during such period, it also offered and issued at least one single payment certificate account, and accepted and received new regular savings from several members, on the basis that the association would pay a competitive dividend, without disclosing that the plaintiff had adopted

resolutions providing that the defendant may not declare, advertise or pay any dividends or interest on its withdrawable accounts for its semiannual periods commencing November 1, 1967 and May 1, 1968.

### Conclusions of Law

■ 1. Since the defendant failed to institute legal action to challenge plaintiff's Temporary Order within the ten-day time limitation specified in section 407(f) (2) of the Act, such Temporary Order has been fully effective and enforceable in all respects since service upon the defendant.

2. This Court has jurisdiction over this action, and is specifically authorized to grant the relief sought by the plaintiff, under section 407(f) (3) of the Act (12 U.S.C. § 1730(f) (3)). This section provides that in the case of violation or threatened violation of, or failure to obey, a temporary cease-and-desist order, the plaintiff may apply to the United States District Court within the jurisdiction of which the principal office of the insured institution is located for an injunction to enforce such order and, if the Court shall determine that there has been such violation or threatened violation or failure to obey, it shall be the duty of the Court to issue such injunction.

3. Since the defendant has failed to institute legal action to challenge plaintiff's Temporary Order within the time limitation and in the manner specified and required by section 407(f) (2) of the Act, and since the plaintiff seeks enforcement of its Temporary Order which is fully effective and enforceable, the specific issue to be resolved by this Court is whether the defendant has violated or failed to obey the Temporary Order, or threatens to violate or fail to obey such Temporary Order.

4. The matters set forth in Finding of Fact No. 10, supra, constitute violations of paragraph 1(a) of plaintiff's Temporary Order.

5. The matters set forth in Finding of Fact No. 14, supra, constitute violations of paragraph 3 of plaintiff's Temporary Order.

■ 6. In view of the matters set forth in Findings of Fact Nos. 9 and 12, supra, there are reasonable grounds for belief that the defendant, absent the issuance of the Temporary Order by the plaintiff, and the enforcement thereof by this Court, would have paid a dividend for the semiannual period commencing November 1, 1967 at the announced rates, and would have paid such dividend without first applying current earnings to eliminate the deficit of at least $580,000 in its undivided profits account. The continuing pattern of defendant's advertisement, declaration and payment of dividends in total disregard of plaintiff's outstanding resolutions and in violation of section 563.13(c) of the Insurance Regulations and the Insurance Agreement, and the payment of dividends by the defendant in excess of earnings and while it had such deficit in its undivided profits account, which would have, in effect, constituted the payment of dividends out of its Federal insurance reserve account in violation of section 403(b) of the Act, section 563.11 of the Insurance Regulations, and the Insurance Agreement, all as set forth in Findings of Fact Nos. 9 and 12, supra, creates a reasonable likelihood that the defendant, unless restrained, would have continued to commit such violations. See Securities and Exchange Commission v. Keller Corp., 323 F.2d 397 (C.A. 7, 1963); Securities and Exchange Commission v. Universal Service Association, 106 F.2d 232 (C.A. 7, 1939), cert. denied, 308 U.S. 622, 60 S.Ct. 378, 84 L.Ed. 519 (1940); R. J. Koeppe & Co. v. Securities and Exchange Commission, 95 F.2d 550 (C.A. 7, 1938).

7. The issuance of a preliminary injunction to prevent further violations or threatened violations of plaintiff's Temporary Order is necessary to protect and safeguard the public interest, the interests of the members of the defendant, and the insurance risk of the plaintiff, the Federal insurer of the withdrawable accounts in the defendant.