FEDERAL SAVINGS AND LOAN IN-
SURANCE CORPORATION, a cor-
poration, Plaintiff-Appellee,

v.

Sidney HUTTNER, Rose Huttner, Irving
Voliner and Gertrude Voliner,
Defendants-Appellants.

No. 16239.

United States Court of Appeals
Seventh Circuit.

Aug. 21, 1968.

Milton J. Kolman, Chicago, Ill., for appellants.

Thomas R. Mulroy, Mark Crane, William L. Heubaum, Chicago, Ill., Alan Jay Moscov, Max Wilfand, Daniel J. Goldberg, William R. Granik, Washington, D. C., Hopkins Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., for appellee.

Before CASTLE, Chief Judge, and HASTINGS and SWYGERT, Circuit Judges.

HASTINGS, Circuit Judge.

Defendants-appellants, as representatives of a class of persons similarly situated, appeal from a judgment order entered by the district court March 14, 1967 denying their motion for summary judgment and granting summary judgment in favor of plaintiff-appellee Federal Savings and Loan Insurance Corporation (FSLIC).[1] The class represented by appellants consists of approximately 20,000 persons who were insured members of Marshall Savings and Loan Association of Chicago, Illinois (Marshall) immediately prior to its opening for business on December 31, 1964 and who received insurance payments of less than $10,000 from the FSLIC following Marshall's default.

All relevant facts were stipulated and the stipulation was adopted by the district court as its findings of fact. Appellants were found to be proper representatives of their class within the re-quirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

FSLIC is a corporate instrumentality of the United States Government created by the National Housing Act, 12 U.S.C. A. §§ 1701–1750jj, to insure savings accounts in eligible savings and loan associations. 12 U.S.C.A. § 1725(a). Marshall was an insured savings and loan association chartered by the State of Illinois. It was subject to the National Housing Act, supra, and the Illinois Savings and Loan Act, Ill.Rev.Stat. ch. 32, §§ 701–944 (1967).

Marshall had two basic types of withdrawable capital accounts: full-paid accounts, in which the holder made a single payment in units of $100 when the account issued, and optional accounts, in which the holder made a minimum initial payment of at least $1.00 when the account issued and thereafter made installment payments at times and in amounts of his choosing.

It was Marshall's practice to compute in advance the anticipated dividend on each account and make a memorandum entry of the anticipated dividend on the ledger card maintained for each account. The computation and memo entry of the anticipated dividend for a new quarter began as soon as the preceding quarter ended and required several weeks for completion. On optional accounts the anticipated dividend was computed and memoed at the same time the account amount of the dividend for the preceding quarter was added to the balance on each account ledger card (the process referred to as "posting"). Memo entries were changed as withdrawals or deposits were made, so that on dividend day the memo entry on each account ledger card represented the actual dividend payable to the account holder.

Dividends on full-paid accounts were paid by check. Marshall maintained a separate Dividend Account at a Chicago bank for the payment of dividends on full-paid accounts and customarily ordered the bank to transfer sufficient

---

1. The opinion of the district court is reported at 265 F.Supp. 40.

funds from its Regular Account to the Dividend Account on dividend day.

Dividends on optional accounts were credited to the accounts, unless the holder requested payment by check. Where payment by check was requested, the check was drawn on Marshall's Regular Account at its Chicago bank. Whether or not the holder requested payment by check, Marshall posted the dividend on each optional account ledger card, by adding the amount of the dividend to the balance of the account on the dividend day or shortly thereafter. Postings were done as of the dividend date.

Although the dividends on optional accounts might not be posted on dividend day, the holders could withdraw them. It was common for holders to present their passbooks on dividend day and have the dividend posted in the passbook by a teller. The teller noted the posting of the passbook on the account ledger card, but did not post the dividend on the ledger card.

During the period from September 29, 1964 to December 31, 1964, inclusively, Marshall's capital was impaired in that its assets were insufficient to pay its members the full balances of their withdrawable capital accounts. On October 31, 1964 and again on November 27, 1964 the Director of Financial Institutions for the State of Illinois notified representatives of Marshall that it appeared, on preliminary information, that Marshall's capital was impaired. On November 4 the Director instructed Marshall's directors to obtain approval for any distribution of funds in excess of $5,000.

On December 15, 1964, the directors of Marshall declared a December dividend to be credited and payable as of the opening of business on December 31, 1964. Marshall did not comply with the FSLIC reserve requirements nor with the Illinois statutory requirement that funds be allocated to reserves when a dividend is declared.

On December 21, 1964, the FSLIC advised Marshall that the December dividend could not properly be paid because of the serious impairment of the association's capital.

On December 29, 1964, Marshall notified the Illinois Director of Financial Institutions that it would pay the December dividend. On the same day the Director received an accountant's final report showing that Marshall's capital was impaired by approximately $6,500,000. The Director determined that an emergency existed at Marshall and issued an order to be effective at 9:00 a. m. on December 31, 1964, taking custody of Marshall's books, records, accounts and assets, pursuant to Sections 7–8 and 7–9 of the Illinois Savings and Loan Act, Ill.Rev.Stat. ch. 32, §§ 848, 849 (1967). He also appointed a custodian effective 9:00 a.m. on December 31.

The custodian took custody of Marshall at the appointed hour. He opened the doors, but ordered Marshall's personnel to conduct no business involving members' accounts. Checks had been written and signed prior to December 31 for payment of the December dividend to holders of full-paid accounts and those holders of optional accounts who had requested payment by check. In addition, on December 29, the passbooks of fifty-eight account holders who had mailed their passbooks to Marshall had been posted with the dividend. The custodian ordered that the prepared checks not be mailed, that the passbook entries be lined out and marked "void," that the transfer of funds to Marshall's Dividend Account at its bank not be ordered, and that no entries be made in journals, ledgers, control sheets or ledger cards to reflect payment of the dividend.

The custodian did not instruct the tellers not to post dividends in passbooks until after 195 holders had presented their passbooks and had the dividend posted. He had earlier authorized the posting, but ordered it stopped later on the morning of December 31.

On April 8, 1965, the Illinois Director of Financial Institutions appointed a receiver for Marshall pursuant to Section 10–1 of the Illinois Savings and Loan

Act, Ill.Rev.Stat. ch. 32, § 921 (1967). By virtue of the appointment Marshall was in default within the meaning of Section 401(d) of the National Housing Act, 12 U.S.C.A. § 1724(d).

The receiver certified to the FSLIC the withdrawal value of members' accounts, not reflecting the December dividend. The FSLIC paid members the value of their accounts up to $10,000, as reflected in the receiver's certification.

Appellants filed a class action in the district court seeking a declaratory judgment that the FSLIC's insurance obligation included the December dividend. That action was dismissed for lack of jurisdiction. Following the dismissal of that action the FSLIC filed the instant action on February 14, 1966 seeking a declaratory judgment that its insurance obligation does not include the December dividend.

Appellants' position is that Marshall's declared December dividend became due and payable when it opened for business on December 31, the dividend day, and therefore became part of the FSLIC-insured withdrawal value of its accounts. They contend that the memo entry of the anticipated dividend on account ledger cards was a sufficient crediting of the dividend, if a formal accounting crediting was required. The seizure of Marshall by the State of Illinois, they maintain, prevented Marshall from paying the December dividend, but did not prevent the dividend from becoming payable.

In answer, the FSLIC argues that the December dividend did not become part of the insured withdrawal value of accounts because the Illinois Director of Financial Institutions caused a rescission of the dividend before it became due and payable. The FSLIC also argues that it is required to pay insurance only on the accounts recognized by the receiver as valid against Marshall's assets. Finally, it argues that it is not required to pay insurance on the December dividend because the dividend was illegal under both common and statutory law.

In granting the FSLIC's motion for summary judgment the district court concluded that the Illinois Director of Financial Institutions properly rescinded the illegal dividend and prevented Marshall from crediting it to members' accounts. As the court construed the relevant statutory provisions and FSLIC Regulations, the amount credited to accounts is the amount insured. The court did not pass on the FSLIC's two alternative arguments.

■ We can readily dispose of appellants' argument that they were in the same position as depositors in a bank and that "interest" on the money left on deposit in Marshall was "rightfully due and payable" to them. The Supreme Court has recently noted in a case involving an Illinois savings and loan association that:

"The holders of withdrawable capital shares are not entitled to a fixed rate of return. Rather, they receive dividends declared by an association's board of directors and based on the association's profits.

\* \* \* \* \* \*

"Because Illinois law ties the payment of dividends on withdrawable capital shares to an apportionment of profits, the petitioners can expect a return on their investment only if City Savings [the association involved] shows a profit." Tcherepnin v. Knight, 389 U.S. 332, 337, 338–339, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967).

The special advantages given savings and loan associations in federal law, including FSLIC insurance and special tax treatment, and the rigid controls imposed on them by state law are merely manifestations of the sensitive, vital role those institutions play in our national economic life. Those advantages and controls do not convert the status of association members from that of investors to that of creditors.

Appellants' rights as members of an insured savings and loan association are defined in the National Housing Act and FSLIC Regulations. Section 405 of the

Act requires the FSLIC, upon the default of an insured association, to pay to the members of that association the "full withdrawal or repurchasable value" of their accounts up to the insurable limit. 12 U.S.C.A. § 1728(a), (b). The FSLIC Regulations in effect at all relevant times defined the account of an insured member as "the total amount credited * * * to any member in withdrawable or repurchasable accounts." (23 Fed.Reg. 9911 (1958), revoked and superseded Sept. 1, 1967), and provided that "the amount of each insured account will be determined from the security contract and from the books and records of the insured institution * * *" (23 Fed.Reg. 9917 (1958) superseded Sept. 1, 1967). It is therefore critical to determine whether the December dividend was "credited".

■ It is clear that the term "credited" in the relevant FSLIC Regulation refers to more than the performance of a routine, mechanical accounting procedure. At minimum it indicates the attachment of the right to receive that which is credited. A dividend on a savings and loan association account becomes credited, therefore, when a dividend has been declared and the account has been maintained until the dividend day. If a bookkeeping entry was a prerequisite to crediting an account in Marshall, the memo entry was sufficient.

■ Obviously a dividend that is wholly prospective is not credited to members' accounts and is not insured. The FSLIC insures against the loss of savings; it does not guarantee earnings on invested savings. As the Supreme Court noted in Tcherepnin v. Knight, supra, earnings on a savings and loan association account are dependent upon the profitability of the association.

■ We agree with the district court that the Illinois Director of Financial Institutions caused a rescission of Marshall's December dividend before it was credited. On December 29, upon receiving the final report that Marshall's capital was impaired and learning of the intention of Marshall's directors to pay the December dividend, the Director acted to take custody of Marshall. Under Section 7-10 of the Illinois Savings and Loan Act, Ill.Rev.Stat. ch. 32, § 850 (1967), the Director, upon taking custody had the power "to operate the business of the association * * * exercising for that purpose all of the rights, powers, and privileges possessed by the officers and directors, liquidators, or trustees." The order taking custody became effective before Marshall opened for business on the dividend day.

Marshall's directors had the power to rescind the dividend resolution. It is beyond question that had they done so, the dividend would not have become due and would not have become part of the insured withdrawal value of its accounts.

To search the actions and statements of the Illinois Director of Financial Institutions for a declaration of rescission would be useless formalism. He took custody of Marshall pursuant to the State's Savings and Loan Act *because* it was insolvent, for the purpose, among others, of conserving its assets. The payment of the December dividend by Marshall while it was insolvent and in violation of FSLIC and Illinois reserve requirements would have been illegal. He ordered that the dividend not be paid and that the accounting steps incident to payment of the dividend not be taken. Although it came at the eleventh hour, the State's intervention occurred before, and prevented, the crediting of the December dividend.

Appellants' argument that the seizure of Marshall prevented the payment of funds, conserving its assets, but did not prevent the maturity of its dividend obligation is specious. The seizure would hardly serve its purpose of conserving the association's assets if it did not pre-

vent the maturity of rescissible obligations.[2]

Since we conclude that the December dividend was not credited, and therefore not part of the insured withdrawal value of members' accounts, we need not consider the other arguments advanced by the FSLIC.

The judgment of the district court appealed from is affirmed.

Affirmed.

2. The provision in superseded Section 564.1 of the FSLIC Regulations, 23 Fed. Reg. 9917 (1958), that the amount of an insured account be determined without regard to whether or not dividends are subject to "recapture" is inapplicable. It was promulgated to provide relief to members of serial associations, which do not periodically pay or credit dividends to members, but apportion profits to series of shares having definite maturity dates. When these associations sustained losses in the depression period, accumulated profits apportioned to series were lost. The Regulations no longer contain such a provision on recapture.