JOHN J. LANIGAN, Successor to Justin Hulman, Commissioner of Savings and Loan Associations, Plaintiff-Appellee, *v.* APOLLO SAVINGS, Defendant-Appellant.

(No. 60911;

First District (3rd Division)—July 17, 1975.

Jacob H. Martin and Sydney G. Craig, both of Martin, Craig, Chester and Sonnenschein, of Chicago, for appellant.

Thomas R. Mulroy, Michael F. Duhl, and John L. Rogers III, all of Hopkins, Sutter, Owen, Mulroy & Davis, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This is an appeal from an order approving a fourth liquidating distribution of the Apollo Savings receivership estate. The receiver, the Federal Savings and Loan Insurance Corporation (FSLIC) presented its planned distribution to the circuit court for approval and several permanent reserve shareholders of Apollo objected that the distribution should be delayed as to one creditor, the FSLIC. The court approved the distribution and the objectors appealed the order. No distribution has been made pending the completion of these proceedings.

On April 8, 1968, a cease and desist order was issued by the FSLIC to restrain Apollo (a savings and loan association) from paying a scheduled dividend because of Apollo's serious financial condition. An injunction was obtained by the FSLIC to assure Apollo's compliance with the order. (*FSLIC v. Apollo Savings* (N.D. Ill. 1968), 285 F.Supp. 750.) On April 26, 1968, the Commissioner of Savings and Loan Associations of the State of Illinois, acting under the power granted by section 7—8 of the Illinois Savings and Loan Act (ISLA) (Ill. Rev. Stat. 1967, ch. 32, par. 848), took custody of Apollo because the association was unable to continue operation and an emergency existed which could have resulted in loss to members or creditors. Proceedings to liquidate Apollo were begun on May 2, 1968, and a decree was entered that sufficient cause existed to dissolve the institution.

Upon the appointment of a receiver the FSLIC, which insured the withdrawable accounts of Apollo up to $15,000, began paying the holders of the insured withdrawable accounts. As of March 31, 1971, the FSLIC had paid $54,289,660 to the holders of these accounts. The FSLIC became the major creditor of Apollo through subrogation to the rights of the insured account holders. Uninsured withdrawable account holders had claims of about $1,100,000 against the receivership.

The receiver resigned on September 30, 1968, and the next day the State commissioner appointed the FSLIC as the receiver.

The receivership became involved in several legal actions. Some of the legal actions can be attributed to the fact that the receivership is producing an operating profit and that it is anticipated that there will be a substantial surplus left after all Apollo's creditors are paid in full. That surplus is being eyed speculatively by all interested parties. In the case of *Lanigan v. Apollo Savings* (1972), 52 Ill.2d 342, 288 N.E.2d 445, several permanent reserve shareholders objected to the FSLIC receiving interest on its claim against the receivership from the date of the default of Apollo. The court decided that 5% uncompounded interest should be paid to the FSLIC. The court said that the uninsured withdrawable account holders were also entitled to interest on their claims and that the insured withdrawable account holders were entitled to interest on their accounts for the period of time between the default of Apollo and their payment by the FSLIC. A second case is presently pending by the withdrawable account holders for the interest that would have been paid in the dividend that was cancelled by the cease and desist order of the FSLIC and the ensuing injunction.

On June 6, 1974, the receiver petitioned the court for approval of a fourth partial distribution. Three previous distributions had been made without objection. There was an objection to the fourth distribution and a hearing was held. The objectors argued that the distribution to the FSLIC should wait until such time as sufficient funds had been generated by the receivership assets to pay the FSLIC in full, principal and interest, and to pay the par value of the permanent reserve stock to the shareholders. The objectors did not seek a delay in the payment of the distribution to general creditors or to the uninsured withdrawable account holders. They distinguished between the FSLIC and the other creditors because of purported equitable considerations militating against payment to the FSLIC which did not apply to the other creditors. If payment to the FSLIC could not be delayed without also delaying payment to the other creditors, the objectors asked that the payment of the distribution be delayed to all creditors.

There is no question that the receiver proposed a proper ratable distribution under section 10—6 of the ISLA (Ill. Rev. Stat. 1971, ch. 32, par. 926), which provides:

> "At any time after the expiration of the published claim date and from time to time, the receiver may make ratable distribution on all such claims as may have been proven to the satisfaction of the receiver, or adjudicated in a court of competent jurisdiction."

The request of the objectors that the distribution be paid to all of the creditors except the FSLIC would be contrary to the statute and also contrary to the rule that creditors of equal stature be treated equally.

The FSLIC was subrogated to the rights of the insured withdrawable account holders in the assets of Apollo and has the right to be treated equally with the other creditors. See *In re Farmer's Bank of Lone Rock* (1946), 248 Wis. 269, 21 N.W.2d 410, where the court said that the Federal Deposit Insurance Corporation stands in the same position and is entitled to the same rights and privileges as the depositors whose claims it insured and paid regardless of the premiums which it charged for insuring depositors.

The objectors argue that their suggested procedure would not harm the FSLIC, but would benefit the permanent reserve shareholders by recognizing the "special equities" involved, namely, that the receivership is generating a surplus; that this surplus would continue to increase if the assets of the receivership were not reduced by the untimely and unnecessary distribution to the FSLIC; that by reason of the increased surplus the shareholders could receive the par value of their stock from the receivership; that a delay in distribution would not be unreasonable because the FSLIC is earning interest on its undistributed funds and termination of the receivership is unlikely for a period of years. The objectors charge that distribution is not being postponed because the receiver-FSLIC is biased in favor of its alter ego the claimant-FSLIC and that such bias is contrary to the receiver's duty to treat impartially all parties who have an interest in the receivership.

The objectors suggest that a fairer formulation of the rule to be applied in this case would be "Where it is established that an estate is solvent and that it will pay all creditors in full plus statutory interest and also produce a surplus for the benefit of the shareholders, then the court should direct the receiver to delay distribution and to continue the estate for such additional period as will allow all parties to be paid out in full." In furtherance of this suggestion they contend that section 10—6 of the ILSA does not deal adequately with the unique circumstances of this case and that it was the duty of the trial court to fill in its gaps in order to make its application fair to all parties, and in not doing this and in not making provision for their "special equities," the court abused its discretion.

■■ While the plea of the objectors may evoke some sympathy, we cannot agree that the chancellor abused his discretion. First of all, the Illinois Savings and Loan Act does not provide any role for the court in the periodic distributions authorized by section 10—6. The final distribution, on the other hand, must have court approval. (Section 10—7; Ill. Rev. Stat. 1973, ch. 32, par. 927.) A court's role in an administrative receivership such as this is limited. As stated in *People ex rel. Knight v. O'Brien* (1968), 40 Ill.2d 354, 358, 359-60, 240 N.E.2d 686:

"The receivership herein, involving the involuntary liquidation of a savings and loan association, is created by the Illinois Savings and Loan Act. That law is patterned after the Illinois Banking Act and the Insurance Liquidation Act of 1933, which have been deemed to create an executive or administrative receivership * * *.

* * *

In the ordinary equity receivership, the receiver is an officer of the court, appointed by the court, and he administers assets which are in the custody of the court * * *.

In contrast, under the administrative receivership created by the Illinois Savings and Loan Act * * *, the receiver is not an officer of the court, nor appointed by the court. * * * [T]he Act gives the receiver and not the court, custody and title to the assets of the receivership * * * and the Act prescribes only limited functions for the court."

Nonetheless, three prior distributions had been submitted to the court for approval and the fourth interim plan was presented. Its propriety thus came under the court's scrutiny. Inasmuch as the court's power to modify the terms of a distribution that is ratable and otherwise compatible with statutory requirements is highly questionable, the chancellor did not violate his discretion in refusing to change or delay the fourth distribution which in all respects was in conformity with the law.

■■ Second, the equitable considerations urged by the objectors did not warrant a departure from the receivership procedure established in section 10—6. The fact that the receivership is generating a profit and that the FSLIC is both the receiver and a claimant are not considerations which call for the relief requested. The objectors have not shown that the receiver has acted unfairly or for the benefit of any party, class or interest. The receiver was appointed for the purpose of liquidating the association (Ill. Rev. Stat. 1967, ch. 32, par. 921) not to make a profit for the permanent reserve shareholders. As in voluntary liquidation proceedings under the ILSA, the goal is to complete liquidation as soon as possible so that the depositors can be paid. (*Baker v. F & F Investment Co.* (7th Cir. 1973), 489 F.2d 829.) The objectors must realize that the permanent reserve shares of stock function as secondary reserves out of which losses are paid when all other available reserves have been exhausted and that such stock is not withdrawable until all liabilities of the association have been satisfied in full. (Ill. Rev. Stat. 1973, ch. 32, par. 763.) Permanent reserve shares are basically risk capital and function as protection for withdrawable capital accounts. (*Lanigan v. Apollo Savings.*) The receiver could not equate the interests of the owners of

such shares with those of the withdrawable account holders who attained the status of creditors upon the default of the association.

That the receiver would only have to delay the payment of the distribution to the FSLIC for a short time is disputed. The objectors contend that sufficent funds would be generated in 22 months to pay the permanent reserve shareholders the par value of their shares in addition to payment in full to the FSLIC. The receiver predicts, however, that to earn that amount of surplus could take 4 or 5 years, and possibly as long as 8 years. Any delay approaching this estimation would be inconsistent with the predominant rights of creditors over those of stockholders and it would run counter to the purpose of the receivership which is to liquidate the association in a prompt and orderly fashion. Furthermore, the delay in the distribution of assets would be detrimental to the FSLIC and other creditors to the extent that they could earn a higher rate of return on those funds than the uncompounded 5% interest they now receive through the receivership.

Having decided that the distribution is proper and should be paid out to all the creditors ratably, it is interesting, in view of the plea of the objectors for equitable consideration, to examine the depth of their interest and the degree to which they may be harmed by the distribution. They own 289,500 of the 617,433 shares of Apollo's permanent reserve stock. The shares were purchased for 15 cents a share as a speculative investment at a public auction after Apollo's default. If the objectors prevailed in this case they could reasonably expect to receive $1.00 for each share. Had they prevailed in *Lanigan v. Apollo Savings* (1972), 52 Ill.2d 342, 288 N.E.2d 445, where their position was that the FSLIC and the uninsured withdrawable account holders were not entitled to interest on their claims, they would have reaped windfall profits of the entire surplus earned by the receivership.

The trial court did not abuse its discretion and its order is affirmed.

Affirmed.

McGLOON, P. J., and McNAMARA, J., concur.