JOHN J. LANIGAN, Comm'r of Savings and Loan Associations, Plaintiff, *v.* APOLLO SAVINGS, Defendant.—(FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Claimant-Appellant, *v.* MARINO A. BERNARDI *et al.*, Intervenors-Appellees.)

First District (3rd Division) No. 61325

Opinion filed July 29, 1976.

Thomas R. Mulroy and Michael F. Duhl, both of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellant.

Laser, Schostok, Kolman & Frank, of Chicago (Milton J. Kolman and Martin I. Becker, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This appeal is one of several resulting from the default of Apollo Savings in 1968. Federal Savings and Loan Insurance Corporation (hereinafter "FSLIC") appeals from an order of the circuit court of Cook County denying FSLIC's motion to vacate or modify the court's order which granted pre-default statutory interest to the intervenor account holders payable on a pro rata basis with the claims of FSLIC and other creditors for post-default interest. Earlier in the litigation, the circuit court had denied post-default interest to the uninsured creditors and to FSLIC in its own behalf as subrogee of the account holders. However, the Illinois Supreme Court reversed the holding and awarded post-default interest from the acknowledged liquidation surplus of the assets of Apollo. (*Lanigan v. Apollo Savings* (1972), 52 Ill. 2d 342, 288 N.E.2d 445.) It should be noted that in *Lanigan* the court determined that the account

holders had a hybrid status of shareholder-creditor upon default and were entitled to "interest" as creditors for use of their funds during liquidation as distinguished from "dividends" prior to default. The claim here is for "compensation" for the use of such funds and has been used interchangeably to denote "interest" and "dividend" in the cases cited as well as in the present case.

The parties agree on the facts in the present case. Apollo, originally organized in 1886, was an insured savings and loan association chartered by the State of Illinois. It was subject to the National Housing Act (12 U.S.C.A. §§1701-1750 jj), and the Illinois Savings and Loan Act (Ill. Rev. Stat. 1967, ch. 32, pars. 701-944). On March 19, 1938, FSLIC initially insured Apollo's accounts, and said insurance was in effect at the time of default. After receiving Apollo's semi-annual financial report, the governing board of FSLIC, on April 8, 1968, issued a cease and desist order prohibiting Apollo from paying a scheduled dividend because of its seriously impaired financial condition. Two weeks thereafter, the United States District Court in *FSLIC v. Apollo Savings* (N.D. Ill. 1968), 285 F. Supp. 750, issued an order restraining Apollo from violating FSLIC's order. On April 26, the Illinois Commissioner of Savings and Loan Associations took custody of Apollo pursuant to his statutory authority and appointed a receiver for the purpose of liquidation.

The appointment of a receiver constituted a "default" under section 401 of the National Housing Act (12 U.S.C. §1724(d)) requiring FSLIC to make payment of insurance pursuant to section 405 of the Act (12 U.S.C. §1728(b)). On May 3, 1968, the circuit court of Cook County entered an uncontested decree of liquidation finding sufficient cause for the "custody, liquidation and dissolution" of Apollo. On May 20, 1968, FSLIC commenced payment of insurance to the insured members of Apollo. Such payment did not include an allowance for dividends or compensation for the holding of depositors' funds for the pre-default period from October 1, 1967 to April 26, 1968, the date of default.

Marino A. Bernardi and Robert S. Clementi were joint holders and owners of withdrawable share accounts in Apollo at and prior to October 31, 1967 through the date when FSLIC paid insurance to the insured account holders. On August 22, 1973, the trial court granted leave to them to intervene and to file a claim on their own behalf and on behalf of the class they purported to represent for payment of compensation on their account for the aforestated pre-default period. Intervenors further requested that they be paid prior to the distribution of the post-default interest to FSLIC and the uninsured creditors. The trial court allowed intervenors' claim as interest for the pre-default period and ordered the payment of such claims on a pro rata basis with the claims of FSLIC and

other creditors for post-default interest. FSLIC appeals from the trial court's denial of its motion to vacate that order. The intervenors have not filed a cross-appeal from the order denying their claim for priority in payment, and that issue is not before us.

FSLIC contends that intervenors are not entitled to predefault interest because of their contractual agreement with Apollo. FSLIC points out that the fundamental difference between a savings and loan depositor and a bank depositor is that the latter receives a pre-determined interest rate on his account, while the former by contractual agreement receives a dividend dependent upon the profitability of the savings and loan association. FSLIC further maintains that since Apollo was insolvent, it legally could not have paid a dividend during the period in question.

Intervenors counter with a number of arguments in favor of granting pre-default interest. Their principal assertion is that in view of the existence of a liquidated surplus, they have the same rights as similarly situated bank depositors. In support of this proposition, they argue that the equities of the situation demand such a ruling. Intervenors base these equities on an interpretation of the supreme court's earlier *Lanigan* decision, the allegation that intervenors relied upon Apollo's course of conduct and assertions to their detriment, and upon the contention that FSLIC breached its duty to protect the depositors.

We believe that the case of *Federal Savings & Loan Insurance Corp. v. Huttner* (7th Cir. 1968), 401 F. 2d 58, while containing slightly different facts than the present case, is clearly dispositive of a number of the issues raised by intervenors. *Huttner*, as here, deals with an insolvent Illinois savings and loan association whose depositors sought a dividend for the time period immediately prior to formal default, but subsequent to the association's actual insolvency. The court held that a dividend had not been declared and was therefore not owed to the depositors. Because of that holding, the dividend in question was found not to be part of the insured withdrawal value of members' accounts and therefore not an obligation of FSLIC in favor of the members.

Intervenors attempt to distinguish *Huttner* by pointing out that unlike the present case, the receiver in *Huttner* had realized no surplus from the liquidation of the association's assets. They contend that the sole issue in *Huttner* was whether FSLIC's insurance obligation encompassed pre-default dividends. Regardless of the absence of a surplus, the language of the court in that case blunts the general thrust of intervenors' basic contention that they should be accorded the status of a similarly situated bank depositor. Citing a United States Supreme Court case involving an Illinois savings and loan association, the *Huttner* court quoted:

" 'The holders of withdrawable capital shares are not entitled to

a fixed rate of return. Rather, they receive dividends declared by an association's board of directors and based on the association's profits.

\* \* \* \* \* \*

Because Illinois law ties the payments of dividends on withdrawable capital shares to an apportionment of profits, the petitioners can expect a return on their investment only if City Savings [the association involved] shows a profit.' *Tcherepnin v. Knight*, 389 U.S. 332, 337, 338-339, 88 S. Ct. 548, 554, 19 L. Ed. 2d 564 (1967)." (401 F.2d 58, 61.)

Later in the opinion, *Huttner* underscores the position that unless a profit existed, there can be no dividend:

"The FSLIC insures against the loss of savings; it does not guarantee earnings on invested savings. As the Supreme Court noted in Tcherepnin v. Knight, supra, earnings on a savings and loan association account are dependent upon the profitability of the association." (401 F.2d 58, 62.)

Apollo earned no profit during the pre-default period and thus should not have paid dividends. An attempted payment of dividends was ordered stopped by FSLIC. This order was upheld by the United States District Court. In line with *Huttner*, we believe that the depositors had no right to receive a dividend for the nonprofitable, pre-default period, irrespective of the source. The *Huttner* court declined to go so far as to state such a payment would be illegal. In light of our holdings, we also see no need to rule on that contention of FSLIC.

Intervenors insist, however, that the equitable considerations of this case dictate that the depositors be treated as though they had placed their funds in a bank. Intervenors point to our supreme court's earlier decision of *Lanigan v. Apollo Savings* (1972), 52 Ill. 2d 342, 288 N.E.2d 445, as evidence of the "general trend" toward equal treatment of depositors in savings and loan associations with depositors in banks. However, as already noted, *Lanigan* dealt with the post-default interest payable from liquidated surplus to withdrawable capital account holders arising from the same default as in the present case, and its holding was based upon the deprivation of the use of the account holder's funds and profits produced therefrom during the liquidation proceedings. The supreme court noted that pre-default interest involves an entirely different issue. Employing the reasoning of our supreme court, we find no deprivation of funds or profits produced thereunder during liquidation proceedings concerning the pre-default monies. Practically all of the account holders were completely reimbursed for the funds held in their accounts within one month after default by FSLIC. Thus it is the money of FSLIC which has

been retained in the receivership since default. Intervenors were at liberty at any time to remove their funds prior to the date of default. Their failure to do so does not entitle them to pre-default interest.

Intervenors next contend that they relied to their detriment on Apollo's course of conduct and should therefore be awarded pre-default interest. They point out that neither the solicitations for deposits nor the passbooks which Apollo issued to account holders contained the information that dividends were contingent upon Apollo's profitability. In light of the fact that 161 consecutive dividends previously had been declared and paid, intervenors urged that they were misled into believing that semi-annual dividends would issue automatically. No evidence was presented that Apollo attempted to mislead prospective depositors into believing that interest, rather than dividends, would be paid. Such a course of conduct would be a violation of the ISLA and the National Housing Act. The Apollo passbook plainly stated that dividends were to be declared on savings accounts. We believe that it is immaterial as to whether the depositors fully understood their rights. In *Family Savings & Loan Association Shareholders' Protective Committee v. Stewart* (1963), 232 Md. 424, 435, 194 A.2d 118, 124, the court stated:

> "There are, perhaps, many of the actual free shareholders who did not, and do not, know their legal rights and responsibilities as such shareholders. * * * However, the fact that the shareholders did not know their legal rights, or failed to exercise them, cannot alter the relationship between the Association and its creditors."

The Apollo depositors easily could have ascertained the full extent of their rights with a minimum of effort. The laws and bylaws governing their accounts were accessible. Moreover, there was no attempt to show that the depositors did not understand their rights. In any case, as no misrepresentation occurred, ignorance on the part of the depositors would not be grounds for altering the fundamental relationship between Apollo and its account holders. The fact that depositors may have expected a guaranteed interest rate does not affect the legal or contractual realities of the situation.

Intervenors also argue that FSLIC breached its statutory duty to protect the rights and the assets of the depositors. They contend that it is a breach of duty for FSLIC to "line its pockets" with the portion of the surplus which it claims. It appears, however, that during this lengthy liquidation FSLIC has functioned well within the spirit and letter of the statutory authority by which it is governed. The claims of the insured account holders were promptly paid. The portion of the surplus claimed by FSLIC has been generated by the funds of FSLIC and the uninsured depositors which have been held by the receivership pending resolution

of the numerous problems encountered in winding up the liquidated process. See *Lanigan v. Apollo Savings* (1975), 30 Ill. App. 3d 781, 332 N.E.2d 591.

While the FSLIC is directed to act "to the best interests of the insured members of the association in default" (12 U.S.C. 1729(b)(5)), the agency is obliged only to give the account holders what is legally owed them. The mere existence of a surplus does not give the account holders legal rights to it. It is not a breach of duty for the FSLIC to claim its fair share of the surplus. Cases have held that the Federal Deposit Insurance Corporation, the sister agency of FSLIC, as assignee of insured bank depositors has been entitled to a portion of post-default interest when a surplus occurs. (*Federal Deposit Ins. Corp. v. Citizens State Bank of Niangua* (8th Cir. 1942), 130 F.2d 102; *Wilhoit v. Federal Deposit Ins. Corp.* (6th Cir. 1943), 143 F.2d 14.) The reasoning of these cases, stressing the preservation of that agency's solvency and the protection of public monies, is equally applicable to the FSLIC. Thus intervenors have demonstrated no breach of duty by FSLIC during the liquidation proceedings.

Intervenors finally urge that a 1971 amendment to Title 12 of the Code of Federal Regulations, section 564.1, should affect the outcome of the present case. Without commenting on the substance of this regulation, we reject the contention. The regulation's effective date is subsequent to the date of the Apollo default, and therefore has no application to our case. See *Mahoney v. Federal Savings & Loan Insurance Corp.* (7th Cir. 1968), 393 F.2d 156, *cert. denied*, 393 U.S. 837, 21 L. Ed. 2d 107, 89 S. Ct. 112.

We hold that the intervenors and their class are not entitled to receive pre-default interest, and that the trial court erred in granting such pre-default statutory interest. Accordingly, the order of the circuit court of Cook County is reversed.

Order reversed.

MEJDA, P. J., and McGLOON, J., concur.